# Wytheville

ELSIE NEW v. H. E. HARMAN COAL CORPORATION, ET ALS.

June 14, 1943.

Record No. 2676.

Present, All the Justices.

The opinion states the case.

*Roland E. Chase,* for the appellant.

*H. Claude Pobst, James W. Harman* and *Marjorie Coleman,* for the appellees.

SPRATLEY, J., delivered the opinion of the court.

This suit was instituted by Elsie New in January, 1941. Its object was to obtain a partition of a tract of land of ninety-seven and one-fifth acres, located in Buchanan County, Virginia, and to have a one-ninth share therein laid off and assigned to the complainant. The one-ninth share in-

cluded a one-tenth interest of which the complainant's mother was alleged to have died seized and possessed and one-ninth of a one-tenth interest which the complainant inherited from an uncle. The bill charged that a deed dated June 16, 1906, purporting to be executed by the complainant's mother and father as grantors, and undertaking to convey a one-tenth interest in the land to Willie Bartley, was void as a forgery, and also voidable because the mother of the complainant was only eighteen years old at the date of the deed and was then physically ill and mentally unable to understand the nature of the transaction. The bill also prayed that the H. E. Harman Coal Corporation, which had a lease to mine the coal on the tract of land, be required to account for the value of coal mined by it.

In addition to Lonnie Bartley and Tom Gooslin, father of Elsie New, nee Gooslin, the remaining appellees are twenty-six persons or corporations, who are claimants of several parts and parcels of the ninety-seven and one-fifth acre tract as successors in title to the heirs-at-law of Andrew F. Bartley, a former owner of the tract, or to the assignees of such heirs-at-law.

The H. E. Harman Coal Corporation filed its answer admitting it was the lessee of the coal mining rights in the said land, but denying that it had mined any coal or was liable in any amount to the complainant. It further set out that it was the lessee under leases from two persons who had died intestate, leaving a number of named surviving children and heirs-at-law who had not been made parties to the suit. It prayed that such heirs-at-law of its lessors be made parties defendant so that they could appear and defend the suit as well as the interest of the lessee.

The appellees, claimants of parts and parcels of the land, filed their joint and separate answers denying all of the material allegations of the bill, and alleging that they were the *bona fide* owners of the respective parcels purchased by them, which had been held by them and their predecessors in title under color of title and by adverse possession for more than thirty years. They averred that their title or the

title of their grantors in the land had been established and adjudicated by a decree in a former suit to quiet the title to the land between the complainant and others, entered on August 2, 1920; and that if the complainant ever had any claim to any of the land, or any interest therein, she was now estopped by her conduct and her laches to assert such right.

The trial court held that the evidence wholly failed to support the charge that the deed from Florence Gooslin and her husband was a forgery; that the statute of limitations barred the right of the appellant to institute this suit in 1941, notwithstanding the infancy of herself and mother at the date of the deed in 1906; and that Elsie New had no just claim to the one-tenth interest inherited by her mother from Andrew F. Bartley's estate, but that she had a good and sufficient title to the one-ninetieth interest which she had inherited from her uncle James.

The trial court appointed commissioners of partition to lay off and assign her the one-ninetieth interest, not including therein any of the land upon which buildings or improvements had been erected by Willie Bartley or those claiming under him, and directed them to make a report of their proceedings to the court.

There are numerous assignments of error, but if the trial court was correct in holding that the deed of June 16, 1906, from the appellant's mother was not a forgery and that the statute of limitations barred the right of the complainant to institute this action in 1941 (and we think the trial court was right), its rulings on these two points control the determination of the case.

A large volume of evidence was taken by depositions. The pertinent and material facts upon the controlling questions may be stated as follows:

Andrew F. Bartley, the grandfather of the complainant, died intestate in 1901, seized and possessed of the tract of land in question. He left surviving as his heirs-at-law his widow, Mary Ann Bartley and ten children. The children

were named Robert, Temp, Victoria, Hulda, Alafair, Willie, John, Florence, Haddon, and James.

Florence married Tom Gooslin on October 2, 1903, when she was around sixteen years of age. One child, the appellant, now Elsie New, was born July 3, 1904. Florence died July 4, 1906, intestate, leaving surviving her her husband and their child, Elsie. Florence was about eighteen years of age at her death and her child was then two years old.

James Bartley, the brother of Florence, died subsequent to her death before he became twenty-one years of age, unmarried and without issue.

Alafair, who had married a man named Belcher, thereafter died intestate, leaving surviving her, her husband and four children.

Each of the ten children of Andrew F. Bartley thus inherited a one-tenth undivided interest in the land of their father, and nine of them, or their respective heirs, a one-ninth of the one-tenth interest in the land of their brother, James Bartley, deceased.

After the death of Andrew F. Bartley, Willie, his son, purchased and had conveyed to him the original one-tenth shares of five of his brothers and sisters. W. H. Looney purchased the one-tenth shares of three of them and also the dower of the widow, Mary Ann Bartley. Thereafter Looney conveyed the interests he had purchased to Willie. Willie later acquired from seven of his brothers and sisters the interests which they inherited from the estate of their deceased brother, James. He did not, however, acquire either of the one-ninetieth interests acquired by the heirs-at-law of his sisters, Alafair and Florence. Willie, through these transactions, became seized and possessed of the legal title to eighty-eight ninetieths interest in the land.

Among the deeds of conveyance to Willie was one signed with the names of Florence Goosline and Tom Goosline, her husband, dated June 16, 1906, eighteen days before the death of Florence. This deed, in consideration of twenty dollars, conveyed to the grantee all of the interest of Florence and her husband in the described real estate of

Andrew F. Bartley, that is, a one-tenth interest which she owned at that time. The signature of Florence was made by her mark. The deed bore the certificate of J. H. Quinley, a justice of the peace, of the County of Buchanan, Virginia, that Florence Goosline and Tom Goosline, her husband, whose names were signed thereto, had acknowledged the same before him, in his county, on June 16, 1906. The deed, with the certificate of acknowledgment, was admitted to record on March 19, 1907, in the Clerk's Office of Buchanan County.

In 1920, Willie Bartley, in order to correct some defects in the title to the land purchased by him, united with certain other complainants in bringing a suit under the name of the *Grundy Coal Corporation, et als.* v. *Haddon Bartley, et als.*, in the Circuit Court of Buchanan County. Elsie New, under the name of Mary Elsivina Gooslin, was named as an infant party defendant. Her guardian *ad litem* answered the bill and she answered by her guardian *ad litem*. By a final decree entered in that suit on August 2, 1920, the legal title of Willie Bartley to eighty-eight ninetieths interest in the surface and one-ninetieth interest in the coal was affirmed.

Although the bill in that suit alleged that Willie owned the entire tract of land, subject to the ownership of certain coal, oil, gas, and mineral rights therein, by the other complainants, it further expressly stated that he had not acquired the two-ninetieths interest inherited by his sisters, Florence and Alafair or their heirs-at-law, from his brother, James. It admitted and stated that "The interest of the infant children of Alafair Belcher and Florence Gooslin are still outstanding in said infants." The bill showed that Willie had acquired the one-ninetieth interest of Robert Bartley, inherited by the latter from James, by deed dated January 19, 1920.

Willie Bartley died in 1927, and by his last will and testament devised all his lands to his son, Lonnie Bartley. About 1934, Lonnie and his mother conveyed to the several persons, firms, and corporations named as the appellees or to

their predecessors in title, the lots, pieces or parcels of land from the ninety-seven and one-fifth acre tract, and the rights and easements therein, which they now claim.

In 1906, the lands in question were worth little. Some of the witnesses valued it at about a dollar an acre. The several heirs of Andrew F. Bartley, prior to 1912, sold their respective one-tenth interests for twenty dollars or less. The land became more valuable in 1920, when its mineral sources were discovered and the H. C. Harman Coal Corporation constructed a modern coal mining plant nearby.

The appellant relies upon the testimony of Robert Bartley, Robert's wife, and Tom Gooslin, to prove that the deed of June 16, 1906, was a forgery and that Florence Gooslin was mentally incapacitated at that time.

The evidence of all three of these witnesses, each of them sixty-four years or more of age, as to what occurred thirty-five years before, was negative, inconsistent, uncertain, confusing, and more or less contradictory. One or two of them remembered that Quinley, the justice of the peace, who took the acknowledgment, came to the house where Florence died and saw her several nights before her death. They said that they did not see Florence sign any paper or deed, and that they did not recall that the subject was brought to her attention. They thought that she was a very ill woman. There was no positive evidence of her mental incompetence.

Tom Gooslin said that he did not know whether his wife signed the deed or not. He didn't think that she did. He was uncertain whether his wife could write, although he was sure she could read. As for signing his name to the deed, the weight of his evidence is best expressed by using his own language: "I don't think I did. I don't have no remembrance of it."

On the other hand, it appears from the record that the signature of Tom Goosline on the deed is markedly similar to other signatures, with the same spelling, admittedly made by Gooslin on papers executed at various other times.

There is the positive evidence of a witness that a twenty-dollar gold piece was paid by Willie to Florence for her

interest in the land, and that she was in a mental condition to understand the transaction and the sale of her property.

Quinley, who is now dead, was reputed to have been an honorable man, and Willie Bartley bore a good name, being like his father, a minister in the faith of the Primitive Baptist church.

Added to all of the above is the weight we must give to the certificate of the officer taking the acknowledgment that the signatures of the grantors were personally acknowledged before him.

"It is settled law in this State that taking and certifying acknowledgments to a deed is a judicial act, and, therefore, the certifying officer's determination of the matters involved has the conclusive force and effect of a judgment and imports absolute verity, and cannot be collaterally attacked." *McCauley* v. *Grim*, 115 Va. 610, 79 S. E. 1041.

Forgery is a felony. Its commission will not be presumed. Every presumption is in favor of innocence and not of guilt. When relied upon for the cancellation of an instrument, it must be proved by clear and satisfactory evidence—evidence that is positive, cogent, and convincing. *Branham* v. *Clinchfield Coal Corp.*, 123 Va. 346, 96 S. E. 761; *Neff* v. *Edwards*, 148 Va. 616, 139 S. E. 291.

In *Russell's Ex'rs* v. *Passmore*, 127 Va. 475, 103 S. E. 652; Judge Sims, considering the presumption of fair dealing which will be drawn after a lapse of time and the loss of evidence by the death of parties, said, quoting from Mr. Justice Story in *Prevost* v. *Gratz*, 6 Wheat. (19 U. S.) 481, at page 503, 5 L. Ed. 311:

"'Fraud or breach of trust ought not lightly to be imputed to the living; for the legal presumption is the other way; and as to the dead, who are not here to answer for themselves, it would be the height of injustice and cruelty to disturb their ashes and violate the sanctity of the grave, unless the evidence of fraud be clear beyond a reasonable doubt.'"

Since Florence Gooslin was an infant, eighteen years of age when she signed the deed, her contract was voidable,

not void, and subject to be affirmed or disaffirmed by her after her arrival of age. Florence having died before she was twenty-one years of age, the deed was subject to attack by her daughter and sole heir-at-law, Elsie, provided she did not delay beyond the period of statutory limitation.

The appellant resided most of her life outside of Virginia. Although she was not in active touch with her Virginia kindred, she communicated with them once in a while. She said that about fifteen years ago, she dreamed that she owned some land in her mother's estate. She asked her father about it, and he told her she might have a claim, but that the land had probably been sold for taxes. Whether this referred to the one-ninth or the one-ninetieth interest we do not know.

The appellant did not bring her action to recover the land until thirty-five years after the death of her mother and for more than fifteen years after she, Elsie New, had become twenty-one years of age. Her right to void the 1906 deed, because of the infancy of her mother and herself, had become completely barred. Virginia Code, 1942 (Michie) sections 5807 and 5808.

By stipulation of counsel, the record shows that Willie Bartley and his wife, in 1925, sold the merchantable timber on the land in controversy to the W. M. Ritter Lumber Company for the sum of $1800.

The trial court held that the appellant was entitled to one-ninetieth of this sum, that is, twenty dollars, with interest thereon from November 11, 1925.

The appellees assign cross-error to so much of the decree as allots the appellant a one-ninetieth interest in the land, and directs a judgment in favor of the appellant for twenty dollars.

There is no evidence to support the contention that the appellant was estopped by her conduct or laches from asserting her claim to the one-ninetieth interest. On the other hand, it is rather clear, as the trial judge held, that "The record fails to show semblance of title in any other person" than Elsie New, a co-tenant therein. No other

person had color or claim of title to this interest in the land. Her claim thereto was not openly denied and no statute of limitation ran against her. There was no evidence of conduct or laches on her part sufficient to deny her the right to assert her claim to the one-ninetieth interest.

If the court intended to enter a judgment against the appellees for twenty dollars on account of the waste committed by Willie Bartley, its jdgment to that extent is erroneous. The appellees are the remote grantees of the person charged with committing the waste, a person now dead, and neither he nor his personal representative is a party to this suit. The waste alleged was committed thirteen years before the appellees acquired any interest in the land.

No evidence was presented to support the allegations of the bill against the defendant coal corporation, allegations specifically denied by its answer. No adjudication or ruling was made on the issues between the complainant and that defendant, and consequently, as between them, there is nothing before us for review.

Save as to the judgment for twenty dollars against the appellees, no error has been shown in the decree of the trial court. In all other respects it is affirmed.

This proceeding is remanded to the trial court for such further proceedings as may be necessary and proper to conclude the cause, in conformity with the views expressed in this opinion.

*Reversed in part, affirmed in part, and remanded.*