# Richmond

## PROVIDENCE FORGE FISHING AND HUNTING CLUB V. MILLER MANUFACTURING COMPANY, INC., AND OTHERS.

### January 12, 1915.

Absent, Keith, P.

1. BOUNDARIES—*Inland Lake or Pond—Adjacent Owner—Center of Pond—Boundary "Along" or "With" Pond—Extent.*—The owner of land adjoining an artificial lake or pond created by damming an ordinary stream takes to the center of the pond unless excluded from such right by deed or contract. A conveyance of land bounded by such pond extends as far as the title of the grantor extends. It makes no difference that the ordinary terms of boundary, as "along" or "with" the pond are used; the title will nevertheless go to the center if the grantee owns to that point. The age of the pond is immaterial.

2. ADVERSE POSSESSION—*Boating and Fishing on Pond—Exclusive—Hostile.*—Fishing and hunting on a pond, renting boats to others to fish and hunt thereon and instructing one's agent not to permit others to boat or fish on the pond without the principal's permission, are not such acts of adverse possession as will confer title as against an adjacent owner who used the pond for boating and fishing whenever he desired to do so. The occupancy necessary to create title by adverse possession must be hostile and exclusive.

3. APPEAL AND ERROR—*Appellant Not Injured—Center of Pond as Boundary.*—Where the thread of a stream feeding a pond is nearest the side of appellant, he is not injured by a decree declaring the center of the pond to be the true boundary between him and the owner on the other side.

Appeal from a decree of the Chancery Court of the city of Richmond. Decree for the defendants. Complainant appeals.

*Affirmed.*

17

The opinion states the case.

*John A. Lamb, Brockenbrough Lamb* and *Samuel A. Anderson,* for the appellant.

*S. O. Bland,* for the appellees.

HARRISON, J., delivered the opinion of the court.

The bill in this cause, which was filed by the appellant Fishing and Hunting Club, seeks to have removed an alleged cloud from its title to certain real estate, and to that end to have rescinded and annulled a certain deed dated February 16, 1911, from Amelia Binns Stringfellow and others to the appellee, the Miller Manufacturing Co., Inc.

The controversy inaugurated by this proceeding involves the title to an artificial pond, approximately one mile and a quarter long, and a quarter of a mile wide, formed by the damming of a natural stream. This pond has existed for many years and is connected with a grist mill located at the southern extremity of the pond. A number of streams run into the pond, or Mirror Lake, as it is sometimes called, chief among them being Rumnor's stream, which is seven or eight miles long and enters the pond at its northern end. Adjoining the pond on the easterly side are the properties of the appellant, formerly known as "Providence Forge," and the property of one Falstrom. Adjoining the pond on the west is the property of the Binnses, appellees, known now as Pearson's, and the "Sycamore Springs" property. Appellant claims the entire pond—the water, the soil under the water, all the trees in the pond, the sole right of fishing in the pond, all rights of property therein, and all land on both sides of the pond which would be under water if the water of the pond were raised to a level with the height of the dam.

Appellees insist that the decree of the Chancery Court of the city of Richmond should be affirmed, holding that a line extending through the center of the pond is the dividing line between the lands of the contestants, the appellees claiming to said center line of the water in the pond, the soil under the water, the trees in the water, the exclusive right of fishing, and all other property rights except the right to interfere with the use of the water for mill purposes.

Authority of the highest character is abundant that an adjoining land owner on an inland fresh water lake or pond takes to the center, the same rules applying in such cases as apply in cases of streams. Of course, the rule does not apply to the great navigable lakes to which all those reasons apply which apply to the sea itself. *Hardin* v. *Jordan,* 140 U. S. 371, 11 Sup. Ct. 808, 35 L. Ed. 428. *A fortiori* is it true that the adjoining land owner will take to the center of an artificial pond, like that under consideration, which is created by damming an ordinary stream, unless he has excluded himself from such right by deed or contract.

In Farnham on Waters, section 869, the author says: "The rules with respect to boundaries upon artificial ponds are very similar to those governing boundaries on the streams on which the ponds are raised. If the pond is created by the damming back of the water of a natural stream, a conveyance of land bounded by it will extend as far as the title of the grantor extends. If his title extends to the center, the grantee will acquire title to that point, but if only to the edge the deed will, of course, carry title no further. It makes no difference that the ordinary terms of boundary, as 'along' or 'with' the pond, are used: the title will nevertheless go to the center if the grantee owns to that point. And the age of the pond is immaterial. * * *

"If there is a desire to exclude the pond from the grant, it may be done by appropriate language, the same as in the

case of streams. In the absence of express exclusion, every reason which has led to the establishment of the rule that boundary on a stream will carry title to the center would seem to apply in case of boundary on a pond formed by artificial expansion of the stream."

There is nothing in the record before us to justify the conclusion, insisted upon by the appellant, that the appellees or their predecessors in title, have excluded themselves from their common law right to the center of the pond in question, as the boundary line between themselves and the appellant.

The appellant insists that the appellees are bound by the description of their property contained in the deed dated November 4, 1892, from their predecessor in title, which describes their land as bounded on the east by the "Providence Forge Mill Pond," thereby, it is contended, excluding any part of the pond from the conveyance. This contention cannot be sustained. The language relied on is not an express exclusion of the grantees' right to the middle of the pond. As said in Farnham on Waters, *supra,* "It makes no difference that the ordinary terms of boundary, as 'along' or 'with' the pond, are used; the title will nevertheless go to the center if the grantor owns to that point." It would seem to be a sufficient answer to this contention that by the same process of reasoning the appellant would also be excluded from any right or title in the pond because by deed dated February 1, 1868, its predecessor in title describes the land now held by it as bounded on the west by the mill tail and mill pond; and reference is expressly made in other deeds in its chain of title to this description.

Appellant further insists that it has acquired title to the whole of this pond by adverse possession for the statutory period. The record wholly fails to show any actual possession of this body of water by any one. The acts of own-

ership relied upon are fishing and hunting, chiefly by the Townsends, the predecessors in title of the appellant, the renting of boats by the Townsends to others for use on the pond, instructions by the Townsends to their agents not to permit anyone else to boat or fish on the pond without their permission, etc.   These acts were not inconsistent with the rights of the appellees, who, together with others, are also shown to have used the pond for boating and fishing when they desired to do so.   The predecessors in title of the appellees, so far as the record shows, had an equal right with the Townsends to charge people for boating and fishing if they had chosen to exercise that right.   Such acts as are relied on here by appellant do not indicate and serve notice of an intention to appropriate the land itself, but only to appropriate the products of it to the dominion and ownership of the Townsends, which is not sufficient. The occupancy necessary to create title by adverse possession must be hostile and exclusive.   The acts testified to in the case before us were neither.   *Austin* v. *Minor,* 107 Va. 101, 57 S. E. 609; *Gardner* v. *Montague,* 108 Va. 192, 60 S. E. 870; *Whealton* v. *Doughty,* 112 Va. 649, 72 S. E. 112.

That the appellant has title to the pond by prescription, as suggested in the petition for appeal, has not been pressed before this court, and there is nothing in the facts of record to sustain the suggestion.

Appellant makes the point, that if the thread of the stream should be the boundary, it has been injured by the decree of the lower court, which fixes the middle of the pond as the boundary line.   If the decree is erroneous in the particular mentioned, as to which we express no opinion, it is to the prejudice of the appellees and greatly to the advantage of the appellant.   The evidence is uncontradicted that most of the channel of the stream is on appellant's side of the pond.   This being so, the appellees, who are not

complaining, are the sufferers by the decree and not the appellant.

Upon the whole case, we are of opinion that there is no error in the decree appealed from to the prejudice of the appellant and it must be affirmed.

*Affirmed.*