# Richmond

GARDEN REALTY CORPORATION V. FLOYD PRICE.

January 16, 1936.

Present, Campbell, C. J., and Holt, Gregory, Browning, Eggleston and Chinn, JJ.

The opinion states the case.

*F. W. Smith,* for the plaintiff in error.

*F. H. Combs,* for the defendant in error.

CHINN, J., delivered the opinion of the court.

This is an action of ejectment brought by the Garden Realty Corporation against Floyd Price, to recover 4.42 acres of land, part of a tract of 189 acres, situated in Buchanan county.

The jury found a verdict in favor of the defendant below, upon which the court duly entered judgment, and the Garden Realty Corporation thereupon obtained this writ of error.

For the purpose of establishing its title, plaintiff proved that the tract of 189 acres of land, which included the parcel of 4.42 acres in controversy, was acquired by one A. G. Arms by deed from J. N. Watkins, special commissioner, bearing date May 31, 1904; and that by deed dated January 10, 1920, A. G. Arms conveyed this 189 acre tract to A. P. Cox and Carrie Cox. In this deed a vendor's lien was reserved for the benefit of E. K. Boyd to secure three notes of $800 each. A. P. Cox and Carrie Cox failed to pay off this lien, which covered the entire 189 acres, and in 1930 the land was sold by F. M. Clevinger, special com-

missioner, under a decree of the Circuit Court of Buchanan county in a chancery suit brought by the assignees of E. K. Boyd against A. P. Cox and Carrie Cox to enforce said lien. At the sale the Garden Realty Corporation became the purchaser, the sale was confirmed by the court, and a deed executed to the Garden Realty Corporation by the special commissioner. The proceedings in the chancery cause were introduced in evidence, and appear to have been regularly conducted.

There are several assignments of error as to the rulings of the trial court, but in the view we take of the case, it is only necessary to discuss the assignment as to the refusal of the court to grant the plaintiff's motion to set aside the verdict of the jury on the ground that it is contrary to the law and evidence.

The general rule is that a plaintiff in ejectment must recover solely on the strength of his own title and not on the weakness of that of his adversary, and this title of the plaintiff must be a legal title. There is no comparison of titles and the verdict is not rendered in favor of the person having a better title, but the plaintiff must show good title in himself, and if he fails to do so, the party in possession is left undisturbed. "The title to be shown by the plaintiff in order to entitle him to recover is either a grant from the Commonwealth connecting himself therewith by a regular chain of title, or such a statement of facts as will warrant the jury in presuming a grant, or adverse possession for the statutory period under a claim or color of title. If, however, the plaintiff and defendant claim title from a common source, the plaintiff need not trace his title back of the common source." Burks' Pleading and Practice (1st Ed.), page 196; *Virginia Midland R. Co.* v. *Barbour,* 97 Va. 118, 33 S. E. 554; *Carter* v. *Wood,* 103 Va. 68, 48 S. E. 553; *Marbach* v. *Holmes,* 105 Va. 178, 52 S. E. 828.

As appears from the evidence above referred to, plaintiff made no effort to trace his title to a grant from the Commonwealth, but only went back to the deed of

May 31, 1904, from J. N. Watkins, special commissioner, to A. G. Arms. It appears, however, from the defendant's evidence that he took possession of the 4.42 acres in controversy in September, 1922, under a parol contract of purchase with A. P. Cox and Carrie Cox, who at that time held legal title to the 189 acres of land, and the plaintiff claims that it was unnecessary to trace its title back to the Commonwealth because both the plaintiff and the defendant were claiming under A. P. Cox and Carrie Cox, which constituted a common source within the meaning of the rule.

It has been long settled in Virginia, however, that a plaintiff in ejectment cannot set up a parol contract of sale to prove a common source of title.

In the case of *Hurley* v. *Charles,* 110 Va. 27, 65 S. E. 468, 469, which was an action of ejectment in which this identical question was passed upon, the court said:

"There is no question that, in ejectment, the plaintiff need not show title beyond the common source, and that he may establish by proper proof the existence of such common source. The question here, however, is how the plaintiff may connect the defendant with such common source, or by what character of evidence it may be done. In this case, the plaintiff seeks to connect the defendant with the alleged common source by proof of a mere parol contract. * * * If a parol sale be binding at all, it would only be an equitable claim of title, and could not be set up by the defendant as a defense in an action of ejectment. * * * * * * * * * *

"If the proof in question is not competent and admissible under the rules of evidence in ejectment to enable the defendant to sustain his case, it would hardly seem reasonable or just to allow the plaintiff to make out his case by its introduction."

Plaintiff further contends that though it failed to make out a good paper title to the land in controversy, it is entitled to recover on the ground of adverse possession.

It appears from the evidence of A. G. Arms, the only

witness introduced by the plaintiff, that at the time he purchased the land from J. N. Watkins, special commissioner, there were two dwelling houses on the 189 acre tract, one of the said houses being located on the 4.42 acres claimed by the defendant in controversy; that when he took possession of the land he moved to the house now claimed by Floyd Price, and lived there five or six years; that he then repaired the old house on the land and moved into it and lived there two or three years; that he then moved off this property and went to the poor farm where he was employed as superintendent of the poor, and remained for eight years; that while he was at the poor farm he farmed some on this property, but could not say what years he cultivated the land, and after he went to the poor farm his son occupied the property for a while, it might have been a year or something like that, and that several tenants lived on the farm from time to time while he was at the poor farm; that he moved back on the property from the poor farm in the year 1913 in the house which he had rebuilt to replace the old house which had been burned.

The defendant testified that he purchased the 4.42 acres of land under a parol contract with A. P. Cox and Carrie Cox in September, 1922, and immediately took possession of the property by repairing the buildings and fences and planting crops and exercising other acts of ownership; that he paid the full purchase price for the property in January, 1923, and moved on it to live in the spring of 1923; that when he purchased the 4.42 acres of land it was enclosed by a fence, and that he had been in the actual, visible, hostile, exclusive, and continuous possession of the 4.42 acre parcel of land, under a claim of right, for more than ten years prior to the institution of the suit, with the knowledge of those holding the legal title, and claims that he was, therefore, entitled to the 4.42 acres of land within said enclosure, by right of adverse possession.

The record shows that the court gave the following instruction to the jury at the request of the plaintiff:

"The court instructs the jury that if they believe by a

preponderance of the evidence that A. G. Arms from whom the plaintiff claims title, had actual, visible, hostile, notorious, exclusive and continuous possession of the 189 acre tract, or some part thereof, described in the plaintiffs' declaration, under color of title, for a period of ten years, then they should find for the plaintiff; unless the jury believes, by a preponderance of the evidence, that Floyd Price had actual, visible, hostile, notorious, exclusive, and continuous possession of the 4.42 acres of land, for a period of ten years, under actual enclosure for said ten years."

It, therefore, appears that the plaintiff and defendant were both relying upon adverse possession of the property, and the case was tried in the lower court upon that theory.

While it is true that the plaintiff claims to have held the land by adverse possession under color of title for the statutory period, we do not think the evidence of his possession is such as to conclusively show that he was entitled to recover on that ground, and even though the jury may have been unwarranted in finding, if they did so find, that the defendant's possession was adverse, neither can we say, under the circumstances, that the jury would have been warranted in finding that the plaintiff is entitled to the premises claimed on that ground.

Such being the case, the plaintiff is not entitled to recover at all, no matter what the rights of the defendant may be, as the burden rests upon it to prove its title by grant from the Commonwealth or from a common source, or by adverse possession under color of title.

Upon careful consideration of all the assignments of error, we do not find any error which we consider prejudicial, or that any useful purpose would be subserved by a discussion of the questions therein involved. The case having been submitted to the jury upon the theory embraced in the above instruction, and the verdict of the jury having been approved by the trial court, the judgment will be affirmed.

*Affirmed.*